UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MAIKOIYO ALLEY-BARNES,

                Plaintiff,

v.

GREG W. SACKMAN; et al.,

                Defendants.

C06-882Z

ORDER

      This matter comes before the Court on Defendants' Motion for Partial Summary Judgment, docket no. 82, Plaintiff's Motion for Continuance Pursuant to Fed. R. Civ. P. 56(f), docket no. 104, Plaintiff's Motion to Strike the Smithies Statement (Pl.'s Resp., docket no. 96, at 7 n.3), Defendants' Motion to Strike Hearsay Evidence Offered in Support of Plaintiff's Response (Defs.' Reply, docket no. 101, at 12), Plaintiff's Motion to Strike Defendants' Reply at 9:7-10:2, and, in the alternative, Plaintiff's request for an opportunity to submit supplemental briefing (Pls.' Strict Reply, docket no. 103, at 3:7-14). Having considered the briefs and declarations in support of and in opposition to the motions, the Court now enters the following Order.

## BACKGROUND

### A.    Present Lawsuit

      Plaintiff Maikoiyo Alley-Barnes brings this lawsuit against five City of Seattle police officers, Chief of Police Gil Kerlikowske, and the City of Seattle, alleging tort claims and

ORDER  1–

violations of his civil rights in connection with his arrest outside a nightclub in the Capitol Hill neighborhood of Seattle. The police officer defendants are Greg W. Sackman, Brian M. Hunt, Kevin M. Jones, John M. Smithies, and Courtney E. Harris. Plaintiff alleges seven causes of action: (1) assault, (2) false arrest, (3) malicious prosecution, (4) negligence in training and supervising police officers, (5) excessive force in violation of Fourth and Fourteenth Amendments and 42 U.S.C. § 1983 ("Section 1983"), (6) failure to adequately train, supervise, and discipline police officers under Section 1983, with a claim for punitive damages, and (7) Monell liability against the City of Seattle under Section 1983. Am. Compl. (Verification of State Court Records at pages 30-37), docket no. 3, ¶¶ 4.1-4.7.

**B.     Littering Incident, Police Backup, and Mr. Alley-Barnes' Arrest**[1]

Early on April 13, 2005, Mr. Alley-Barnes was leaving *The War Room* nightclub in the Capitol Hill neighborhood with two companions, Thomas Gray and Cori Ready. Sergeant Greg W. Sackman was standing by the door of *The War Room*, when he observed Mr. Gray throw litter into the street. Tran Decl., docket no. 83, Ex. A (Alley-Barnes Dep.) at 64:25-66:2 and Ex. C (Sackman Testimony) at 18:19-19:1. Mr. Gray picked up the litter, and Sgt. Sackman approached him to ask him for his identification and to consider issuing a citation. Diamondstone Decl., docket no. 91, Ex. B (Rhodes Testimony) at 508-509, and Ex. C (Sackman Testimony) at 25:20-26:6, 27:1-23.

As Sgt. Sackman got Mr. Gray to the street side of the police car, Mr. Alley-Barnes and Ms. Ready walked out and towards Sgt. Sackman and Mr. Gray. Id., Ex. B (Rhodes Testimony) at 511:19-512:2. Mr. Alley-Barnes and Ms. Ready started saying something like "So what's this all about? Why are you doing this, you know? What's he been charged with?" Id., Ex. B (Rhodes Testimony) at 512:6-10. Mr. Alley-Barnes and Ms. Ready "walked around [to] the other side of the patrol car where [Mr. Gray] and the officer were." Id., Ex. B (Rhodes Testimony) at 512:24-513:1. They get to within "six or eight feet" of Sgt. Sackman. Id., Ex. B (Rhodes Testimony) at 513:4-5. While standing at a distance of six feet, Mr. Alley-Barnes and Ms. Ready talked to Sgt. Sackman. Id., Ex. B (Rhodes Testimony) at 514:8-12.[2] Sgt. Sackman asked, "Why do you feel it's necessary to watch me?" Tran Decl., Ex. A (Alley-Barnes Dep.) at 76:15-21, 77:6-7. Mr. Alley-Barnes responded that it was his "right as [a] tax-paying citizen[] to watch [Sgt. Sackman] doing his

---

[1] Due to the many factual disputes in this case, the Court provides a minimal factual background and resolves any differences in Plaintiff's favor.

[2] Defendants assert that Mr. Alley-Barnes got to within one foot of Sgt. Sackman. Tran Decl., Ex. C (Sackman Testimony) at 37:25-38:2.

ORDER   2–

duty as a public servant." Id., Ex. A (Alley-Barnes Dep.) at 77:7-12. Then, according to Plaintiff, "Sergeant Sackman told us, directly after telling us that it wasn't our rights, that we need to go across the street." Id., Ex. A (Alley-Barnes Dep.) at 77:23-25. Mr. Alley-Barnes "told Sergeant Sackman that we would move to the front of his automobile, but that from across the street we were unable to see or hear what it was he was saying to our friend." Id., Ex. A (Alley-Barnes Dep.) at 78:1-5, 87:6-17. After about a minute of this conversation, Sgt. Sackman clicked his radio. Diamondstone Decl., Ex. B (Rhodes Testimony) at 514:8-14. When Sgt. Sackman got on his police radio, Mr. Alley-Barnes' voice can be heard in the background referring to the "civil rights of people of color." Second Diamondstone Decl., docket no. 99, Ex. 1 (audio). Mr. Alley-Barnes was relaying his concerns about the treatment of people of color as he was moving to the front of the patrol car. Tran Decl., Ex. A (Alley-Barnes Dep.) at 88:2-11.

Within a minute or so of Sgt. Sackman's call for backup, Officer Hunt arrived on the scene in his patrol car. Officer Hunt observed two people walk from the driver's side of Sgt. Sackman's vehicle to the front of it. Diamondstone Decl., docket no. 91, Ex. D (Hunt Testimony) at 280:1-7, 281:19-21. This testimony is consistent with Mr. Alley-Barnes' testimony that he moved to the front of Sgt. Sackman's patrol car. Tran Decl., Ex. A (Alley-Barnes Dep.) at 78:6-8. Officer Hunt did not see Mr. Alley-Barnes hit, lunge at, or touch Sgt. Sackman in any way. Diamondstone Decl., Ex. D (Hunt Testimony) at 285:8-14. Officer Hunt saw another person, who turned out to be Mr. Gray, stay with Sgt. Sackman. Id., Ex. D (Hunt Testimony) 283:19-284:1.

When Officer Hunt approached the scene, Sgt. Sackman pointed to Mr. Alley-Barnes and told Officer Hunt to place him into custody. Id., Ex. D (Hunt Testimony) at 285:1-2. Officer Hunt was joined by Officers Jones, Harris, and Smithies, who used force to bring Mr. Alley-Barnes to the ground with his hands behind his back. Once Mr. Alley-Barnes was in handcuffs, Officer Hunt took Mr. Alley-Barnes in his patrol car to the East Precinct. Tran Decl., Ex. A (Alley-Barnes Dep.) at 134:21-135:6; Defs.' Mot. at 9:19-20; Pl.'s Resp. at 7:18-19.[3]

**C.   Criminal Proceeding Against Mr. Alley-Barnes**

Mr. Alley-Barnes was charged with three misdemeanor offenses: (1) obstructing a public officer, SMC 12A.16.010; (2) resisting arrest, SMC 12A.16.050; (3) assault, SMC

---

[3] Whether the force used against Mr. Alley-Barnes during his arrest was excessive is irrelevant to the present summary judgment motion, and therefore facts related to the excessive force are not described herein.

ORDER   3–

12A.06.010. Tran Decl., Ex. K (Seattle Municipal Ct. Docket) at 1. At the probable cause hearing on April 14, 2005, the Seattle Municipal Court concluded that probable cause existed for Mr. Alley-Barnes' arrest: "There would be probable cause from the report." Id., Ex. G (Excerpt from Hearing Apr. 15, 2005, Case No. 469892) at 2:16-17. Counsel for Mr. Alley-Barnes did not challenge the court's probable cause finding. Id., Ex. G at 2:18.

The criminal trial started on July 6, 2005. Id., Ex. K (Seattle Municipal Ct. Docket) at 2. After the prosecution rested, counsel for Mr. Alley-Barnes moved to dismiss the charges of obstruction and assault. Id., Ex. H (Excerpt from Seattle Municipal Ct. Trial) at 2. After hearing argument from counsel, the Court denied the motion to dismiss the obstruction charge, explaining that:

> The testimony as to Mr. Alley-Barnes is that after he was told by Sergeant Sackman to move away, he actually moves closer at the side of the car. The testimony is that he comes up to Sergeant Sackman to the point that he's one foot away. The Court does find that this is a very close call, but that distance of being within one foot of the officer when the officer is attempting to write a citation, is sufficient considering the entire situation; the entire testimony of the sergeant to make a prima facie case of physical interference, based upon his proximity at the side of the car, that that could physically interfere with the officer's ability to conduct his investigation at that point and time. So I would deny the motion to dismiss as to Mr. Alley Barnes at this time and find that the city has a prima facie case as to obstruction as to Mr. Alley Barnes.

Id., Ex. H (Excerpt from Seattle Municipal Ct. Trial) at 29:11-30:1. The Court also denied the motion to dismiss the assault charge, determining that the City presented "sufficient evidence for the charge of assault to go to the jury." Id., Ex. H at 18:13-17.

However, during trial Municipal Court Judge Jean Rietschel dismissed the criminal charges against Mr. Alley-Barnes due to a Brady v. Maryland, 373 U.S. 83 (1963) violation, resulting from the failure of the police department to turn over a videotape of the incident containing exculpatory information to the defense until the fifth day of trial. Id., Ex. L at 571-573 (Court's Findings); Gordon Decl., docket no. 32, ¶ 4.

**D.   Training**

In reports covering the periods January to September 2004, and October 2004 to March 2005, Police Auditor Katrina Pflaumer made recommendations to Chief Kerlikowske regarding the need to train police officers to prevent minor incidents from escalating into major confrontations (i.e., de-escalation training). Diamondstone Decl., Ex. R (Pflaumer Dep.) at 11:13-13:21, 18:6-19:10, 31:16-24, 33:23-34:25, Deposition Ex. 45 at 9 and Ex. 46 at 4. The Director of the Office of Professional Accountability ("OPA") for the Seattle Police Department, Sam Pailca, also "made several written policy recommendations . . . to

ORDER   4–

the chief" regarding de-escalation training. Id., Ex. S (Pailca Dep.) at 52:4-56:24, Dep. Ex. 17 (docket no. 94). Chief Kerlikowske testifies that a de-escalation training curriculum was incorporated into the Street Skills 2006 refresher training. Id., Ex. T (Kerlikowske Dep.) at 57:19-23. Street Skills is the mandatory training that every officer repeats each year. Id., Ex. S (Pailca Dep.) at 52:24-25. Chief Kerlikowske testifies that there was "additional emphasis . . . in de-escalation in 2006 than in perhaps 2002 or 2001" but that "all of the instruction is designed to hopefully prevent and eliminate or not have a situation escalate or occur in violence." Id., Ex. T (Kerlikowske Dep.) at 58:7-11, 59:24-60:1.

# DISCUSSION

## A.     Defendants' Motion for Partial Summary Judgment, docket no. 82

Defendants[4] move for partial summary judgment on Plaintiff's claims for false arrest (Am. Compl. ¶ 4.2), malicious prosecution (id. ¶ 4.3), negligence in training and supervising (id. ¶ 4.4), failure to adequately train, supervise, and discipline police officers under Section 1983 (id. ¶ 4.6), and Monell liability against the City of Seattle under Section 1983 (id. ¶ 4.7). In other words, Defendants move for summary judgment on all claims except Plaintiff's assault and excessive force claims.

### 1.     Summary Judgment Standard

Summary judgment is appropriate when the movant demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

### 2.     Probable Cause as Defense to False Arrest and Malicious Prosecution Claims

Plaintiff's second cause of action alleges that "Defendants Sackman, Hunt, Jones and the City of Seattle are liable to Plaintiff for the tort of false arrest." Am. Compl. ¶ 4.2. Plaintiff's third cause of action alleges that "Defendant City of Seattle is liable to Plaintiff for the tort of malicious prosecution." Id. ¶ 4.3.

---

[4] Police officers Hunt, Jones, Smithies, and Harris, and Chief Kerlikowske, and the City of Seattle filed the motion for partial summary judgment, to which Defendant Sackman joined once the stay as to him was lifted following his completion of military duty. See Order Lifting Stay, docket no. 100; Greg Sackman's Joinder in Defendants' Motion for Partial Summary Judgment, docket no. 111.

ORDER  5–

Probable cause is a complete defense to Plaintiff's false arrest claims under both federal and state law.[5] Pierson v. Ray, 386 U.S. 547, 555 (1967) ("[A] peace officer who arrests someone with probable cause is not liable for false arrest."); United States v. Del Vizo, 918 F.2d 821, 825 (9th Cir. 1990) ("An arrest must be supported by probable cause."); Hanson v. City of Snohomish, 121 Wn.2d 552, 563 (1993) ("[P]robable cause is a complete defense to an action for false arrest and imprisonment.").

"To maintain an action for malicious prosecution, the plaintiff must allege and prove the following: (1) that the prosecution claimed to have been malicious was instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution. Bender v. City of Seattle, 99 Wn.2d 582, 593 (1983). "Malice and want of probable cause are the gist of the action." Id. Thus, probable cause is also a defense to a malicious prosecution action.

Defendants argue as a matter of law that Defendants had probable cause to arrest and prosecute Mr. Alley-Barnes for obstruction.[6] It is undisputed that Sgt. Sackman instructed Officer Hunt to place Mr. Alley-Barnes into custody for obstruction. According to the ordinance under which Mr. Alley-Barnes was charged, "[a] person is guilty of obstructing a public officer if . . . he or she (1) intentionally and physically interferes with a public officer; or . . . (5) intentionally refuses to leave the scene of an investigation of a crime while an investigation is in progress after being requested to leave by a public officer." SMC 12A.16.010. Defendants argue that "[a]lthough the parties' accounts of events differ with respect to much of what happened outside the War Room the night of this incident, the stories merge on one important point – as Sgt. Sackman conducted an investigation of Mr. Gray's offense, he told Mr. Alley-Barnes to move across the street, and Alley-Barnes refused." Defs.' Mot. at 12. Plaintiff responds that "[t]he parties agree that Sgt. Sackman

---

[5] Defendants' motion assumes that Plaintiff is alleging a Section 1983 claim for unlawful arrest as well as a state claim of false arrest even though the Complaint only mentions the "tort" of false arrest. Plaintiff's Response relies entirely on federal case law.

[6] Although Mr. Alley-Barnes was charged with obstructing an officer, resisting arrest, and assault, the charges for resisting arrest and assault arise out of the arrest itself. Accordingly, the Court limits its probable cause analysis to the obstruction charge which resulted in the arrest.

ORDER  6–

was conducting a littering investigation with respect to Mr. Gray, that Mr. Alley-Barnes and another person questioned the appropriateness of that investigation in light of the fact that Mr. Gray had picked up the littered item, and that Sackman directed Mr. Alley-Barnes and the person who was with him to step away." Pl.'s Resp. at 13.  However, Plaintiff does not agree that Mr. Alley-Barnes refused to heed Sgt. Sackman's instruction.  Rather, Plaintiff asserts that Mr. Alley-Barnes walked away from Sgt. Sackman, citing the testimony of Officer Hunt.  Diamondstone Decl., Ex. D (Hunt Dep.) at 280-281.

There are genuine issues of material fact about how close Mr. Alley-Barnes stood to Sgt. Sackman while they were talking (i.e., whether there would be physical interference under SMC 12A.10.010(1)) and about Mr. Alley-Barnes' response to Sgt. Sackman's request for him to leave (i.e., whether SMC 12A.10.010(5) was violated).  The Court DENIES Defendants' motion for summary judgment on the Plaintiff's second and third causes of action – i.e., Plaintiff's false arrest and malicious prosecution claims – because the Court cannot find as a matter of law that Sgt. Sackman and Officer Hunt had probable cause to arrest Mr. Alley-Barnes for obstruction, or that the City of Seattle had probable cause to prosecute him for obstruction.  See Menotti v. Seattle, 409 F.3d 1113, 1150 (9th Cir. 2005) ("Whatever may be decided by the trier of fact, at the summary judgment stage we must credit [Plaintiff's] testimony and conclude that a reasonable jury could determine that there was not probable cause to arrest [Plaintiff] for obstructing an officer.").

### 3. Collateral Estoppel on Probable Cause Issue

Defendants argue that the doctrine of collateral estoppel should be applied to prevent Plaintiff from re-litigating the issue of probable cause.  Washington courts require a party asserting collateral estoppel to "prove: (1) the issue decided in the prior adjudication is identical to the one presented in the current action, (2) the prior adjudication must have resulted in a final judgment on the merits, (3) the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior adjudication, and (4) precluding relitigation of the issue will not work an injustice on the party against whom collateral estoppel is to be applied."  Clark v. Baines, 150 Wn.2d 905, 913 (2004).  Defendants assert that the Seattle Municipal Court twice found that sufficient probable cause existed to support the obstruction and assault charges. The first decision was made at the probable cause hearing on April 14, 2005, when the Seattle Municipal Court concluded that probable cause existed for Mr. Alley-Barnes' arrest: "There would be probable cause from the report."  Id., Ex. G (Excerpt from Hearing Apr. 15, 2005, Case No. 469892) at 2:16-17.  Counsel for Mr. Alley-Barnes at the time did not challenge the court's probable cause finding.  Id., Ex. G at 2:18.  The second probable cause decision was made during the criminal trial, after the

ORDER  7–

prosecution rested, when the Seattle Municipal Court denied Mr. Alley-Barnes' motion to dismiss the obstruction and assault charges. Tran Decl., Ex. H (Excerpt from Seattle Municipal Ct. Trial) at 18:13-17, 29:11-30:1.

Plaintiff argues that collateral estoppel should not be applied because any Seattle Municipal Court findings concerning probable cause were: (1) tainted by the false testimony, and (2) not final rulings. "When an individual has a full and fair opportunity to challenge a probable cause determination during the course of the prior proceedings, he may be barred from relitigating the issue in a subsequent § 1983 claim." Awabdy v. City of Adelanto, 368 F.3d 1062, 1068 (9th Cir. 2004) (citing Haupt v. Dillard, 17 F.3d 285, 289 (9th Cir. 1994)). "However, collateral estoppel does not apply when the decision to hold a defendant to answer was made on the basis of fabricated evidence presented at the preliminary hearing or as the result of other wrongful conduct by state or local officials." Awabdy, 368 F.3d at 1068 (citing Haupt, 17 F.3d at 290 n.5); accord Fondren v. Klickitat County, 79 Wn.App. 850, 856-858 (1995) (not applying collateral estoppel if earlier conviction was arguably the product of fraud, perjury or corrupt means).

Plaintiff argues that the April 14, 2005 probable cause hearing decision rested on a police report that Sgt. Sackman and Officer Hunt prepared, and Officer Hunt signed, which Officer Hunt later admitted "wasn't completed properly" in that it says that Mr. Alley-Barnes moved towards Sgt. Sackman in a threatening manner, in contrast to his testimony during the criminal trial that Mr. Alley-Barnes walked away. Tran Decl., Ex. U (Hunt Dep.) at 88-89. The Incident Report states, in pertinent part:

> Sgt. Sackman then walked around to the front of his patrol car with S/Gray in an attempt to get away from S/Alley and S/Murphy. Both followed Sgt. Sackman and S/Gray and continued to state that they had a legal right to stand wherever they wanted. At this time Officer Hunt arrived. Sgt. Sackman ordered S/Alley to back away a final time and warned him that he would be arrested if he didn't comply. S/Gray [sic – S/Alley] moved towards Sgt. Sackman in a threatening manner instead. Sgt. Sackman directed Officer Hunt to arrest S/Alley for Obstructing.

Diamondstone Decl., Ex. K at 2. Plaintiff points out that Sgt. Sackman also testified that there were no "overt actions . . . no threats made towards me," and that Sgt. Sackman's concerns for his safety arose out of Mr. Alley-Barnes' and his companions' failure to obey his verbal directions to stand back so he could conduct his business. Tran Decl., Ex. C (Sackman Testimony) at 44:2-11. Because both Officer Hunt and Sgt. Sackman have presented contradictory testimony to their report upon which the Seattle Municipal Court

ORDER  8–

based its preliminary probable cause ruling, the Court does not apply collateral estoppel to prevent Plaintiff from re-litigating the probable cause issue based on that preliminary ruling.

Plaintiff has failed to argue that Judge Rietschel's ruling on Mr. Alley-Barnes' motion to dismiss at the close of the prosecution (i.e., that there was sufficient evidence to support the obstruction and assault charges) was made based upon fabricated evidence or that it would have been different if the Elliot patrol car video had been turned over at the beginning of the case. Instead, Plaintiff argues that this ruling was not a final adjudication of the merits and also that the application of collateral estoppel will work an injustice on Mr. Alley-Barnes. Judge Rietschel's denial of Mr. Alley-Barnes' motion to dismiss was not "final" for collateral estoppel purposes because Judge Rietschel only viewed the facts presented by the prosecution and viewed them in the light most favorable to the government. Tran Decl., Ex. H (Transcript) at 6, 10. It was not a final adjudication on the merits. Applying collateral estoppel would work an injustice because Mr. Alley-Barnes did not receive "a full and fair hearing on the issue" in that he was unable to present his evidence and arguments. Clark, 150 Wn.2d at 913; cf. Hanson, 121 Wn.2d at 563 ("[A]pplication of the doctrine of collateral estoppel would not work an injustice here as [Plaintiff] has had an opportunity to present his evidence and his arguments on the issue to the trial court and the Court of Appeals.").

The Court DENIES Defendants' summary judgment motion on the collateral estoppel issue. The Court does not apply the doctrine of collateral estoppel based on either of the prior Seattle Municipal Court rulings.

### 4. Malice

In the alternative to their probable cause and collateral estoppel arguments, Defendants move for summary judgment on Plaintiff's malicious prosecution claim by arguing that Plaintiff cannot show malice. "[W]hile [malice] may be inferred from the lack of probable cause, it is not a necessary deduction from this circumstance." Bender, 99 Wn.2d at 594. Malice "may be satisfied by proving that the prosecution complained of was undertaken from improper or wrongful motives or in reckless disregard of the rights of the plaintiff. Impropriety of motive may be established in cases of this sort by proof that the defendant instituted the criminal proceedings against the plaintiff: (1) without believing him to be guilty, or (2) primarily because of hostility or ill will toward him, or (3) for the purpose of obtaining a private advantage as against him." Id. (quoting Peasley v. Puget Sound Tug & Barge Co., 13 Wn.2d 485, 502 (1942)). Plaintiff argues, correctly, that the misrepresentations in the Incident Report and the concealment of the exculpatory video during Mr. Alley-Barnes' criminal trial raise genuine issues of fact as to malice that defeat

ORDER   9–

summary judgment on Plaintiff's malicious prosecution claim.  The Court DENIES Defendants' summary judgment motion on Plaintiff's malicious prosecution claim because genuine issues of material fact exist as to whether the proceedings were instituted or continued through malice.

### 5. **Qualified Immunity**

The defendant officers move for qualified immunity on Plaintiff's false arrest claims under both federal and state law.  Under federal law, "[q]ualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.'"  Saucier v. Katz, 533 U.S. 194, 200 (2001) (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)).  As a result, the Supreme Court has emphasized the importance of resolving immunity questions at the earliest possible stage in litigation.  Id. at 201.  The threshold inquiry is whether, taking the facts in the light most favorable to Plaintiff, the individual defendants' conduct violated one of Mr. Alley-Barnes' constitutional rights.  Id. at 201.  If no constitutional violation occurred, then no further inquiry is necessary and the suit should be dismissed.  Id.  If a constitutional violation could be made out on a favorable view of Plaintiff's submissions, then the inquiry turns to whether the constitutional right was "clearly established."  Id.

Taking the facts in the light most favorable to Mr. Alley-Barnes, Sgt. Sackman and Officers Hunt and Jones violated the Fourth Amendment requirement to have probable cause before an arrest.  As previously discussed, Mr. Alley-Barnes has raised genuine issues of fact as to whether probable cause existed for his arrest for obstruction.  Defendants do not argue that the it is not "clearly established" that the constitution requires probable cause to arrest.  Defendants argue that Officers Hunt and Jones reasonably relied upon their supervisor, Sgt. Sackman, in the determination of whether probable cause existed to arrest Mr. Alley-Barnes for the events that arose before their arrival.  There is no evidence from Officers Hunt and Jones that they relied on Sgt. Sackman, other than the fact that Sgt. Sackman ordered Officer Hunt to place Mr. Alley-Barnes into custody.  Defendants have also provided no case authority that would support a grant of qualified immunity based on a reliance upon a superior's orders.  Defendants merely rely on Saucier, 533 U.S. at 206, for the proposition that "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause," without explaining what mistaken beliefs were held by Officers Hunt and Jones.  The Court DENIES Defendants' Motion for Summary Judgment to the extent it seeks qualified immunity for the police officers under federal law.

Under state law, "[p]olice officers have common law qualified immunity from state tort claims if their conduct meets a three-part test: (1) they are carrying out a statutory duty,

ORDER   10–

(2) according to the procedures dictated by statute and superiors, and (3) they acted reasonably." Estate of Lee ex rel. Lee v. City of Spokane, 101 Wn.App. 158, 176 (2000). Defendants have failed to explain what statutory duty they were carrying out. More importantly, the Court cannot determine as a matter of law that Officers Hunt and Jones acted reasonably according to procedures dictated by statute and superiors given all the factual disputes about the incident and taking the facts in a light most favorable to Plaintiff (i.e., that Mr. Alley-Barnes walked away when Sgt. Sackman asked him to leave). Defendants' motion is vague and fails to show the officers' entitlement to qualified immunity. The Court DENIES Defendants' Motion for Summary Judgment to the extent it seeks qualified immunity for the police officers under state law.

### 6. Negligent Supervision and Training Claim

Plaintiff's fourth cause of action alleges that "Defendants Kerlikowske and the City of Seattle are liable for the damages which resulted due to their negligence in training and supervising police officers, including but not limited to Defendants Sackman and Hunt." Am. Compl. ¶ 4.4. Defendants provide no argument that this state tort claim should be dismissed against the City of Seattle (i.e., no discussion of the elements of duty, breach, causation, damages, of sovereign immunity, or of the public duty doctrine). The Court DENIES Defendants' Motion for Partial Summary Judgment as to Plaintiff's fourth cause of action for negligent supervision and training as to the City of Seattle.

Defendants argue that Chief Kerlikowske has statutory immunity under RCW 4.24.470 with respect to "all" of Mr. Alley-Barnes' state law claims against Chief Kerlikowske. The only state law claim alleged against Chief Kerlikowske is Plaintiff's fourth cause of action for negligent training and supervision. Thus, the question is whether Chief Kerlikowske has statutory immunity with respect to Plaintiff's fourth cause of action. The statute provides:

> An appointed or elected official or member of the governing body of a public agency is immune from civil liability for damages for any discretionary decision or failure to make a discretionary decision within his or her official capacity, but liability shall remain on the public agency for the tortious conduct of its officials or members of the governing body.

RCW 4.24.470.

Under RCW 4.24.470, Chief Kerlikowske is immune from civil liability for damages regarding any decisions he made, or failed to make, within his official capacity, and he argues that his training and supervision of Seattle Police Department officers involve decisions made within his official capacity as Chief of Police. See Seattle City Charter, Art.

ORDER  11–

VI, Sections 1, 4 (Chief of Police is appointed by the Mayor and "shall manage the Police Department, and shall prescribe rules and regulations, consistent with law, for its government and control.").

Plaintiff's one-sentence response, Pl.'s Resp. at 24, does not challenge the application of RCW 4.24.470 to Chief Kerlikowske. Plaintiff does not assert that the negligence claim is asserted against Chief Kerlikowske in his individual capacity. Accordingly, the Court GRANTS Defendants' Motion for Partial Summary Judgment as to Plaintiff's fourth cause of action as alleged against Chief Kerlikowske and dismisses that claim against him.

### 7.  Section 1983 Claim Against Chief Kerlikowske

Plaintiff's sixth cause of action alleges that "Defendant Kerlikowske is liable to Plaintiff pursuant to 42 U.S.C. § 1983 for the failure to adequately train and supervise and discipline police officers, including Defendants Sackman and Hunt. To the extent that Defendant Kerlikowske's actions were with callous indifference or reckless disregard to the rights of Plaintiff and similarly situated individuals, Defendant Kerlikowske is liable for punitive damages." Am. Compl. ¶ 4.6. Defendants move for summary judgment on Plaintiff's claim for punitive damages under Section 1983, arguing that this claim is against Chief Kerlikowske in his official capacity, which is thus against the City of Seattle, a municipal corporation that is immune from punitive damages awards. Defs.' Mot. at 23-24. Plaintiff responds that "Plaintiff has not sought punitive damages against the City or against the Chief in his official capacity. . . . Plaintiff does seek punitive damages against the Chief in his personal capacity." Pl.'s Resp. at 24 n.7. Accordingly, the Court STRIKES Defendants' Motion as to Plaintiff's sixth cause of action as moot in light of Plaintiff's clarification that Plaintiff is not bringing a Section 1983 claim for punitive damages against Chief Kerlikowske in his official capacity.

### 8.  Section 1983 Claim Against the City of Seattle

Plaintiff's seventh cause of action alleges that "The City of Seattle is liable to Plaintiff for violation of Plaintiff's civil rights to the extent that the failure to train, supervise and discipline police officers is a policy, practice or custom of the City of Seattle." Am. Compl. ¶ 4.7. Municipalities are "persons" subject to suit under 42 U.S.C. § 1983. See Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 n.55 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor – or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Id. at 691. Section 1983 "imposes liability on a government that, under color of some official

ORDER  12–

policy, 'causes' an employee to violate another's constitutional rights." Id. "City policy 'causes' an injury where it is 'the moving force' behind the constitutional violation." Chew v. Gates, 27 F.3d 1432, 1444 (9th Cir. 1994) (quoting Monell, 436 U.S. at 694). A plaintiff must establish that the municipality acted with "deliberate indifference" to his rights; "deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," such as a "glaring omission in a training regimen." Bd. of County Comm'rs of Bryan County, Okl. v. Brown, 520 U.S. 397, 410 (1997). Plaintiff has submitted evidence that Police Auditor Pflaumer and OPA Director Pailca both recommended to Chief Kerlikowske that he implement de-escalation training prior to April 2005, but no such particular training was implemented until 2006. This is sufficient evidence to raise a genuine issue of material fact, precluding summary judgment on Plaintiff's claim for municipal liability under Section 1983 against the City of Seattle. The Court DENIES Defendants' Motion for Partial Summary Judgment as to Plaintiff's seventh cause of action for municipal liability.

**B.    Plaintiff's Motion to Strike the Smithies Statement, Pl.'s Resp., docket no. 96, at 7 n.3**

Plaintiff moves to strike the statement of Officer Smithies, Tran Decl. Ex. I, which Defendants submit in support of their assertion that there was a riot at another club the day prior to the incident outside *The War Room* nightclub involving Mr. Alley-Barnes. The Smithies Statement is irrelevant to Defendants' summary judgment motion, and, as a result, the Court does not consider it. The Court DENIES as moot Plaintiff's Motion to Strike the Smithies Statement, Pl.'s Resp., docket no. 96, at 7 n.3.

**C.    Plaintiff's Motion to Strike Defendants' Reply at 9:7-10:2, and, in the alternative, Plaintiff's request for an opportunity to submit supplemental briefing, Pls.' Strict Reply, docket no. 103, at 3:7-14**

Defendants moved for summary judgment on Plaintiff's claim against Chief Kerlikowske for punitive damages under Section 1983. Plaintiff's one-sentence response raised an issue that was not raised in Defendants' opening motion. Plaintiff argues that "Chief Kerlikowske is also subject to personal liability, as a supervisor, for the failure to train described above." Pl.'s Resp. at 24 (citing Larez v. City of Los Angeles, 946 F.2d 630, 645-649 (1991)). In Larez, an excessive force case, the Ninth Circuit upheld liability against the Los Angeles Police Chief in his individual capacity based on a jury instruction that allowed for such liability: "if he sets in motion a series of acts by others, or knowingly refused to terminate a series of acts by others, which he knew or reasonably should have

ORDER  13–

known, would cause others to inflict the constitutional injury." 946 F.2d at 646. The Ninth Circuit's rationale was that "[s]upervisory liability is imposed against a supervisory official in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivations of which the complaint is made; or for conduct that showed a reckless or callous indifference to the rights of others." Id. (internal citations and quotations omitted). In Larez, the Ninth Circuit held that the Police Chief "condoned, ratified, and encouraged the excessive use of force" by not disciplining the officers, by not establishing new procedures for the reoccurrence of similar excesses in the future, and by rejecting the plaintiff's citizen complaint. Id.

In their reply, Defendants assert that Larez does not apply because Mr. Alley-Barnes has failed to establish significant personal involvement by the Chief or any ratification of the acts by the Chief. Plaintiff has filed a "Strict Reply" on the ratification issue, docket no. 103, at 2-3, asking the Court to either strike Defendants' Reply at 9:7-10:2 or allow Plaintiff an opportunity to submit supplemental briefing on the ratification issue. Pls.' Strict Reply, docket no. 103, at 3:7-14. Because Defendants did not move for summary judgment on the ratification issue, the Court declines to reach the issue. Accordingly, the Court DENIES as moot Plaintiff's motion to strike Defendants' reply brief at 9:7-10:2, and Plaintiff's request, in the alternative, for an opportunity to submit supplemental briefing on the ratification issue, Pls.' Strict Reply, docket no. 103, at 3:7-14.

**D.** **Defendants' Motion to Strike Hearsay Evidence Offered in Support of Plaintiff's Response, Defs.' Reply, docket no. 101, at 12; Plaintiff's Motion for Continuance Pursuant to Fed. R. Civ. P. 56(f), docket no. 104**

Defendants move to strike Exhibits N, O, P, and Q attached to Fred Diamondstone's Declaration, docket no. 91, because, Defendants argue, those exhibits are hearsay and inadmissible. The exhibits consist of emails and memorandum from and between Assistant City Attorney Mike Sanders, Seattle Police Department Legal Advisor Leo Poort, and Sgt. David Proudfoot. Defendants argue that the statements are not signed by the purported declarant; constitute unsworn testimony; lack proper foundation; are not properly authenticated; are not based on personal knowledge; do not comply with Local Rule CR 10(e)(6); and are not admissible at trial. Defs.' Reply at 12 (citing FED. R. CIV. P. 56(e) and FRE 801, 802, Local Rule 10(e)(6)). Plaintiff's Strict Reply, docket no. 103, at 4-5, asserts that these are business records of the City of Seattle and are admissible in evidence under FRE 803(6) and 803(8). These documents all pertain to the Elliott patrol car video, about

ORDER  14–

which Plaintiff sought to depose Leo Poort, but was unable to as a result of the Court's granting of the City's Motion to Quash Notice of Deposition to Leo Poort. Minute Order, docket no. 60. Plaintiff moves for a Rule 56(f) continuance if the Court is inclined to strike the records from evidence. Pls.' Mot. for Continuance, docket no. 104. Plaintiff renews his request to take the deposition of Mr. Poort concerning the authenticity of the documents which the City now seeks to exclude, and also seeks to take the deposition of Sgt. Proudfoot with respect to the same subjects.

The Court DENIES as moot Defendants' Motion to Strike Hearsay Evidence, Defs.' Reply, docket no. 101, at 12, because the Court does not rely on any of these four exhibits to rule on Defendants' summary judgment motion. Similarly, the Court DENIES as moot Plaintiff's Motion for Continuance, docket no. 104. The Court advises the parties that it will reconsider its Order granting the City's Motion to Quash Notice of Deposition to Leo Poort, Minute Order, docket no. 60, if the parties are unable to resolve the case at the settlement conference scheduled for August 21, 2007. The Court's reconsideration of the issue, however, does not affect the Court's ruling on Defendants' summary judgment motion.

## CONCLUSION

The Court GRANTS IN PART, STRIKES IN PART, and DENIES IN PART Defendants' Motion for Partial Summary Judgment, docket no. 82. The Court grants Defendants' motion and dismisses Plaintiff's fourth cause of action for negligent training and supervision against Chief Kerlikowske because he has statutory immunity under RCW 4.24.470 for that claim. However, in the absence of a motion on this claim as to the City, the fourth cause of action remains against the City of Seattle. The Court strikes as moot Defendants' motion as to Plaintiff's sixth cause of action in light of Plaintiff's clarification that Plaintiff is not bringing a Section 1983 claim for punitive damages against Chief Kerlikowske in his official capacity. The Court denies Defendants' motion as to the second and third causes of action for false arrest and malicious prosecution because Plaintiff has raised genuine issues of material fact as to probable cause and malice. The Court denies Defendants' motion to the extent Defendants moved the Court to apply collateral estoppel to prevent Plaintiff from re-litigating the probable cause issue. The Court denies Defendants' motion to the extent the police officers sought qualified immunity for the false arrest claims under both federal and state law. The Court denies Defendants' motion as to Plaintiff's seventh cause of action for municipal liability under Section 1983 because Plaintiff has raised a genuine issue of material fact on the issue of the Chief's failure to implement de-escalation training.

ORDER   15–

The Court DENIES as moot all of the motions to strike, see Pl.'s Resp., docket no. 96, at 7 n.3, Defs.' Reply, docket no. 101, at 12, and Pls.' Strict Reply, docket no. 103, at 3:7-14.  The Court has not considered the disputed evidence in making its summary judgment ruling.  In the absence of a motion, the Court declines to reach the ratification issue.

The Court DENIES as moot Plaintiff's Motion for Continuance Pursuant to Fed. R. Civ. P. 56(f), docket no. 104.  However, the Court will reconsider its Minute Order, docket no. 60, granting the City's Motion to Quash Notice of Deposition to Leo Poort, if the parties are unable to resolve the case during the settlement conference scheduled for August 21, 2007.

IT IS SO ORDERED.
DATED this 15th day of August, 2007.

*Thomas S. Zilly*

THOMAS S. ZILLY
United States District Judge

ORDER   16–